**SOPHIE GREENBERG, a married woman deserted by her husband for more than six months, v. FRANCES A. POST, joined by her husband, S. A. POST.**

19 So. (2nd) 714

November 7, 1944

June Term, 1944

En Banc

*Erle B. Askew, Richard T. Earle, Jr.,* and *Clair A. Davis,* for appellant.

*Austin L. Richardson,* for appellees.

SEBRING, J.:

Frances A. Post was a servant and employee of Frances A. Post Inc., a corporation doing a beauty parlor business in Cleveland, Ohio. Sophie Greenberg became a patron of the corporation for the purpose of receiving beauty treatments there. Subsequently Sophie Greenberg instituted this suit in

the Circuit Court of Pinellas County against Frances A. Post to recover damages for injuries alleged to have been inflicted upon her by said employee by means of an X-ray machine.

The declaration avers, in substance, that in March 1940 and for several years prior thereto Frances A. Post, Inc., a corporation, had held itself out to the general public as being able to remove superfluous hair from the human body permanently without injury to the person. In April 1931 the corporation, for a valuable consideration paid by the plaintiff, undertook to remove excessive and superfluous hair from the face and neck of the plaintiff. The defendant, Frances A. Post, was the servant and employee of the corporation, who supervised and administered the treatments consisting, in part, of the application of Roentgen rays upon the person of Sophie Greenberg by means of an X-ray machine manipulated, controlled and operated by Frances A. Post. The defendant negligently administered the Roentgen rays to the injury of plaintiff in the following particulars: Defendant negligently subjected plaintiff to an excessive amount of Roentgen rays; negligently focused the X-ray machine too close to plaintiff's person and exposed plaintiff's person to the Roentgen rays over too great a period of time; negligently continued to expose plaintiff to the Roentgen rays after defendant knew or should have known that she had injured plaintiff by over-exposure to such rays.

Pleas were filed by the defendant putting the plaintiff to proof of the declaration, and the parties went to trial. At the close of plaintiff's case in chief the trial court entered an order granting a motion for a directed verdict in favor of the defendant. The single question on this appeal is whether the entry of such order constituted reversible error.

A proper determination of the question calls for an analysis of the evidence submitted by plaintiff. From the record before us it appears that prior to treatment Sophie Greenberg had heavy hair growing on her face and neck; in all other respects her skin was smooth and fair. Wishing to rid herself of this hirsute disfigurement she went for treatment to a beauty parlor conducted by Frances A. Post, Inc., in Cleveland, Ohio. She was attracted there by an advertisement

appearing in the newspapers wherein the corporation pro-
claimed the virtues of a certain process used by it whereby
superfluous hair could be removed from the human body
permanently without injury to the person. At the beauty
parlor Sophie Greenberg was met by the defendant, Frances
A. Post, who was apparently in sole charge of operations.
Upon plaintiff making known the purpose of her visit,
Frances A. Post advised her that the treatments referred to
in the newspapers consisted in part of the application of
Roentgen rays by means of an X-ray machine; that the
treatments were effective yet harmless; and that for the
sum of $150.00 the offending hair could be removed perma-
nently from the face and neck of Sophie Greenburg without
personal injury. Plaintiff agreed to pay the amount stipu-
lated and embarked upon the course of treatments offered.
The treatments consisted of the application of hot wax packs
to the face and neck followed by the administration of
Roentgen rays.. Plaintiff knew nothing of the use or effect
of X-rays upon the skin of a human being. In accepting
treatments she relied solely upon the statements made by
the defendant that proper and harmless results would be
obtained; and upon the supposed superior skill of the de-
fendant in giving the treatments. No time was fixed by the
parties for the termination of the treatments, it being under-
stood and agreed that the treatments should continue until
a complete cure was effected.

In giving the treatments, hot wax was first placed upon
the face and neck of the patron and then allowed to cool.
Upon cooling, this depilatory agent was removed from the
skin bringing the offending hair with it. Such stubborn
hairs as remained after this operation were jerked from the
skin of the patron with tweezers. Roentgen rays were then
played on the face and neck of the patron by means of an
X-ray machine manipulated or operated by Frances A. Post,
or by someone under her immediate direction and supervision,
the length and time of exposure being determined solely by
the defendant. Frances A. Post was neither a physician or
a surgeon. Her assistants knew nothing of the use of X-ray
except that which had been taught them by defendant.

The treatments continued at approximately two week intervals from April 1931 to March 1940. Following a certain treatment in 1936 plaintiff's face turned purple and became violently discolored. Plaintiff called defendant's attention to this condition and was advised by her that this was a natural, harmless transient condition resulting from the treatments administered, and that it was not a thing that should cause concern or alarm. Being thus assured by defendant, Sophie Greenberg continued taking the treatments. Shortly after this experience, heavy wrinkles began to appear in plaintiff's face which, when exposed to the weather, bled and caused great pain. As time went on this condition greatly worsened. Frances A. Post prescribed and applied cold cream of her own selection to plaintiff's face and neck to alleviate this condition. In 1939 a sore broke out on plaintiff's chin. Frances A. Post again assured plaintiff that this was but a temporary condition that would soon cure. Thereafter, at defendant's solicitation, the X-ray treatments were continued; more cold cream was applied.

On October 21, 1940, plaintiff consulted a skin specialist concerning the condition of her face and neck. He was called as a witness at the time of trial. His testimony was that he had found the skin of the face and neck of plaintiff to be wrinkled and atrophic. He had likewise found several warty lesions which he thought might become malignant, and a skin cancer which he had had to remove by operation. His diagnosis was that the condition was brought about by over-exposure to ex-radiation and would become progressively worse.

Another dermatologist called as a witness testified that he had examined plaintiff shortly prior to trial and that her chin, cheeks and neck showed a wrinkling which was the result of skin atrophy. On plaintiff's chin was a small scar. There were three or four areas upon the face which showed a beginning of keratosis. The condition which he observed was not normal for a woman of plaintiff's age. His diagnosis was that such skin condition was due to the application either of radium or X-rays, as these were the only agencies that could have produced the condition; that such skin condition

will grow progressively worse and may become malignant. Witness testified further that a skilled professional technician will know the capacity of a machine used by him, and how many hours and in what intensity Roentgen rays may be applied to the skin of a human being without injury to the person. When properly applied by such a skilled professional operator the use of X-ray is safe and harmless; otherwise applications therefrom may produce harmful results, the effects of X-ray being cumulative.

Upon this testimony the trial judge directed a verdict for the defendant. We think that in this he committed reversible error.

In a jury trial the motion of the defendant at the close of plaintiff's case for a directed verdict should never be granted unless the evidence is such that, under no view which the jury might lawfully take of it favorable to the other party, can a verdict for him be sustained. It is only in the absence of all evidence against the defenant that the court should direct a verdict in his favor. See Crandall, Florida Common Law Practice, pp. 305, 306 Sec. 208 and cases there cited. For the purposes of the motion the moving party admits not only the facts adduced, but every conclusion favorable to his adversary fairly and reasonably inferable therefrom. Florida Motor Lines, Inc. v. Bradley, 121 Fla. 591, 164 So. 360; Talley v. McCain, 128 Fla. 418, 174 So. 841; Russell v. Atlantic Coast Line R. Co., 129 Fla. 535, 176 So. 778; Hastings v. Taylor, 130 Fla. 249, 177 So. 621; Duval Laundry Co. v. Reif, 130 Fla. 276, 177 So. 726; Fain v. Cartwright, 132 Fla. 855, 182 So. 302; Carter v. Florida Power & Light Co., 138 Fla. 220, 189 So. 705; Smith v. Burdines, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115. Such motion raises a question of law for the trial judge respecting the legal sufficiency of the evidence to sustain a verdict against the defendant. If the appellate court finds, on review of an order directing a verdict, that the trial court erred as a matter of law in granting the motion, the judgment of the trial court will be reversed and the cause remanded for a new trial.

Upon a motion for a directed verdict made at the close of plaintiff's case, the evidence given on behalf of the plaintiff

must be considered as true in ruling upon the motion. Dempsey Vanderbilt Hotel v. Huisman, (Fla.) 15 So. (2nd) 903. In the record there is direct and circumstantial evidence tending to prove the negligence alleged, at least prima facie. Epitomized, the evidence is that an X-ray machine when properly adjusted and carefully handled is a harmless agency and that the administration of rays therefrom is not likely to produce injury. Such machine, when improperly used, is dangerous. The diagnoses of the physicians were that the plaintiff's condition was due to the excessive application of radium or X-rays; that the injuries were caused by over-exposure to ex-radiation. It is shown that the defendant Frances A. Post was in sole charge of the activities of the beauty parlor of the X-Ray machine that was supposed to have produced the injurious results to plaintiff. She conducted all negotiations with plaintiff and gave her all assurances of proper and harmless results. She determined the nature of the treatments to be given and the intervals at which they should be administered. She determined the length of exposure to the machine and the intensity of the rays to be applied. All treatments were given by Frances A. Post, or by assistants acting under her sole and exclusive domination and control. When plaintiff's condition reached the point at which she was in pain, it was Frances A. Post who assured her that the condition was merely temporary, and that the treatments should continue.

When the facts of the case are studied in light of the motion for directed verdict, they clearly give ground, we think, for a reasonable inference that if due care had been employed by the person charged with due care in the premises, the injuries complained of would not have happened to plaintiff. See Lewis v. Casenburg, 157 Tenn. 187, 7 S. W. 2nd 808, 60 A.L.R. 254. For other cases holding for and against this conclusion see annotations: 13 A.L.R. 1414; 26 A.L.R. 732; 57 A.L.R. 268; 60 A.L.R. 259. Under the peculiar facts of the case an action was maintainable against the defendant, Frances A. Post, for the alleged injuries claimed to have been sustained by plaintiff; albeit an action might also have been prosecuted against the corporation by whom

she was employed.  It is well settled that an employee may be held personally liable at the suit of a third person for positive negligent acts committed by him even though his employer may likewise be liable for the servant's negligent conduct when exercised within the scope of the employment. See 35 Am. Jur. 1024, 1025, Sec. 587; Labatt's Master & Servant, 2nd Ed. p. 7967, Sec. 2586.

In our view, the plaintiff has made a prima facie case that calls for explanation or rebuttal on the part of defendant. The case must go back for new trial and a submission of the issues to the jury.  It is for the jury to say on another trial whether on the whole case the plaintiff has shown by a preponderance of the evidence that she was injured and that such injuries were approximately caused by the negligence of the defendant.

The judgment is reversed and the case remanded for new trial.

It is so ordered.

TERRELL, BROWN, CHAPMAN, THOMAS and ADAMS, JJ., concur.

BUFORD, C. J., dissents.

BUFORD, C. J., dissenting:

I think the record fails to show any actionable negligence on the part of defendant and that the order directing a verdict in her favor was without error.  Judgment should be affirmed.